## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF GEORGIA
## SAVANNAH DIVISION

| | | |
|---|---|---|
| RAFAEL GARZA, IV, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV424-264 |
| | ) | |
| CORY MICHAEL BARELLA, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER AND REPORT AND RECOMMENDATION

*Pro se* plaintiff Rafael Garza, IV filed this case alleging that his constitutional rights were violated during a traffic stop and subsequent prosecution. *See generally* doc. 1. He paid the required filing fee and obtained summonses. *See, e.g.,* doc. 3. Defendants Barella, Lanier, Ballard, and Brinson entered a special appearance and moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(5), on the ground that they were never properly served. *See generally* doc. 7. Garza responded in opposition. Doc. 14. Defendant Mobley appeared and moved to dismiss on several grounds. *See generally* doc. 9. Garza filed a timely opposition, doc. 12, Mobley replied, doc. 16, and Garza sur-replied, doc. 18. Finally, Garza filed a Motion for Entry of Default against all Defendants. Doc. 10. Defendants responded in opposition, docs. 13 & 15,

1

and Garza replied, doc. 17.  All of the pending motions are, therefore, ripe for review.

### I.    Motion to Dismiss for Lack of Service (Doc. 7)

Defendants Barella, Lanier, Ballard, and Brinson are officers of the Pooler Georgia Police Department, who allegedly violated Garza's rights during a traffic stop and arrest.  *See generally* doc. 1; *see also* doc. 7 at 1-2.  Defendants represent that Garza attempted to serve them by leaving process with Lieutenant James Self, also of the Pooler Police Department.  *See* doc. 7 at 2; *see also* doc. 7-1 at 2.  Defendants have filed affidavits attesting that they were never personally served with process in this case.  *See* doc. 7 at 2; *see also* doc. 7-2 at 2; doc. 7-3 at 2; doc. 7-4 at 2; doc. 7-5 at 2.  They argue that delivering process to Lieutenant Self was not effective service on any of them.  *See* doc. 7 at 2.  Plaintiff's response, charitably construed, argues that because he retained the services of a Chatham County, Georgia Sheriff's Deputy to effect service, any lack of effective service "is a breach of contract and by no means reflect dishonor [sic] upon said Plaintiff."  Doc. 14 at 2.

In this case, both parties' positions are correct.  First, on a motion to dismiss, it is a plaintiff's burden to establish valid service.  *See, e.g.,*

*Reeves v. Wilbanks*, 542 F. App'x 742, 746 (11th Cir. 2013). Defendants are correct that there is no discernable basis in federal or Georgia law for serving an individual defendant with process by leaving it at his place of employment, absent authorization. *See, e.g., Smith v. AMH 2014-1 Borrower, LLC*, 2023 WL 5103423, at *3 (N.D. Ga. July 18, 2023) ("It is generally not effective, absent a waiver or acceptance of service, to serve persons in their individual capacity by leaving papers with a co-worker at their place of employment," and collecting cases). Given his burden, therefore, Garza would have to prove that Lieutenant Self was authorized to accept service on behalf of the individual defendants. *See, e.g., Reeves*, 542 F. App'x at 746. He has not done so.[1] *See generally* doc. 14.

Despite Plaintiff's failure to effectively serve defendants, dismissal is not an appropriate remedy. Although Federal Rules of Civil Procedure

---

[1] A brief comment on Garza's "breach of contract" assertion is in order. The Court has reviewed the proofs of service submitted. *See generally* doc. 6. The proofs consist of sheriff's entries of service by a Chatham County, Georgia deputy sheriff. *See, e.g., id.* at 1. Those proofs include a check-box for service upon an individual "by leaving a copy of the action and summons at his place of employment," with an identification of the individual with whom process was left. *Id.* While any comment on whether the service provided by the deputy breached any enforceable contract would be inappropriate, the Court is surprised, to say the least, that the form appears to invite a method of service that could only be effective in exceptional circumstances and, even in those circumstances, fails to solicit the information (*i.e.*, the assertion that the recipient of process was authorized to accept it) that would establish they applied.

12(b)(5) and 4(m) provide for dismissal of an action, without prejudice, where service is not validly effected within ninety days of the complaint's filing, the court must consider whether there is "good cause" for the plaintiff's failure to timely serve.[2] *Lepone-Dempsey v. Carroll Cnty. Comm'rs*, 476 F.3d 1277, 1282 (11th Cir. 2007). "Good cause exists only when some outside factor, such as reliance on faulty advice, rather than inadvertence or negligence, prevented service." *Id.* at 1281 (internal quotation marks, alterations, and citation omitted). Even in the absence of such a showing, courts "must still consider whether any other circumstances warrant an extension of time based on the facts of the case." *Id.* at 1282. "Only after considering whether any such factors exist

---

[2] In *Lepone-Dempsey*, the Eleventh Circuit established the analysis required prior to dismissal pursuant to Rule 4(m). *See Leopone-Dempsey*, 476 F.3d at 1280-81. However, Rule 12(b)(5) motions are, conceptually, intertwined with the time limit imposed under Rule 4(m). Service is not definitively "insufficient," within the meaning of Rule 12(b)(5), until the expiration of the deadline under Rule 4(m), as any insufficiency could always be corrected within the deadline. *See, e.g., Deshommes v. Yellen*, 2025 WL 274374, at *2 (S.D. Fla. Jan. 16, 2025) (discussing Rule 4(m)'s deadline in the context of considering a Rule 12(b)(5) motion); *McFadden v. Emory Healthcare, Inc.*, 2021 WL 11728292, at *3 (N.D. Ga. Nov. 1, 2021)("If service is not perfected within 90 days after the complaint is filed, Rule 12(b)(5) provides that a defendant may move to dismiss a complaint for insufficient service of process."). That conceptual connection supports extending *Lepone-Dempsey*'s mandate to analysis of motions under Rule 12(b)(5). Moreover, although the Court has discovered no authority expressly holding that *Lepone-Dempsey* applies in the context of a Rule 12(b)(5) motion, other courts have applied it. *See, e.g, Keith v. Agrella*, 2023 WL 8851598, at *1-*2 (M.D. Ala. Dec. 21, 2023); *Toney v. Advantage Chrysler-Dodge-Jeep, Inc.*, 2021 WL 3207629, at *4 n. 3 (M.D. Fla. Mar. 30, 2021).

may the district court exercise its discretion and either dismiss the case without prejudice or direct that service be effected within a specified time." *Id.*

The Court construes Garza's response, doc. 14, as asserting good cause for failing to effectively serve defendants within the ninety-day deadline. Given his apparently reasonable reliance on the Chatham County Sheriff's Office to effect service of process, the Court finds that he has shown "good cause." *See, e.g., Benjamin v. Grosnick*, 999 F.2d 590, 592 (1st Cir. 1993) (finding "good cause" for failure to serve where "[t]he blame for the error rested with the deputy sheriff."); *Reifsteck v. Kelly-Springfield Tire Corp.*, 2002 WL 206488, at *1 (N.D. Ill. Feb. 11, 2002) ("Because of the return of service by the Sheriff, plaintiff reasonably abstained from further investigation, and was entitled to rely on it in the absence of information to the contrary." (citing *Benjamin*, 999 F.2d at 592)). Given that Garza has shown good cause for his failure to serve defendants Barella, Lanier, Ballard, and Brinson, their Motion to Dismiss should be **DENIED, without prejudice**. Doc. 7. If the District Judge adopts this recommendation, Garza is **DIRECTED** to effect

service upon Defendants Barella, Lanier, Ballard and Brinson by no later than twenty-one days from the date of the District Judge's Order.[3]

## II.    Motion to Dismiss (Doc. 9)

Defendant Mitchell C. Mobley, an assistant district attorney, moves to dismiss Garza's claims against him on several grounds. He argues that Garza fails to allege sufficient facts, implicating him, to state any claim. *See* doc. 9-1 at 2-3. Alternatively, he asserts that he is only mentioned in the Complaint in his capacity as an assistant district attorney. *See id.* at 3. In that capacity, however, he enjoys absolute immunity under both federal and state law. *Id.* (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 (1976); *Holsey v. Hind*, 377 S.E. 2d 200, 200-201 (Ga. App. 1988)). He also argues that the substantive claims Garza appears to allege against the other defendants would be barred, if asserted against him, under the Eleventh Amendment, sovereign immunity, and the Georgia Tort Claims Act, O.C.G.A. §§ 50-21-20, *et seq.*

---

[3] Garza remains free to use any means of personal service contemplated under Federal Rule 4(e) and the incorporated provisions of O.C.G.A. 9-11-4(e)(7). The Court also notes that Plaintiff remains free to request that the defendants waive personal service, pursuant to the provisions of Federal Rule 4(d). Since the waiver request must provide defendants at least thirty days to respond, *see* Fed. R. Civ. P. 4(d)(1)(F), if Garza intends to request a waiver, he will have to request an extension of the deadline to ensure the waiver request process may be completed, and if waiver is declined, that sufficient time to effect service remains.

*See id.* at 4-16.  Because the Court concludes that the Complaint fails to state any claim against Mobley and, to the extent that it does, Mobley enjoys absolute immunity, it does not reach his other arguments.

Under a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must "accept[ ] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  *Belanger v. Salvation Army*, 556 F.3d 1153, 1155 (11th Cir. 2009) (citation omitted).  However, unlike factual allegations, conclusions in a pleading "are not entitled to the assumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  On the contrary, legal conclusions "must be supported by factual allegations."  *Id.*  Indeed, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal."  *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).  Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679.

As Mobley's Motion points out, the allegations implicating him directly are, charitably, sparse. Doc. 9-1 at 3.  The Complaint alleges that Mobley "is the Assistant District Attorney for" the law enforcement

defendants.  Doc. 1 at 2, 14.  The only other place his name appears is in Garza's claims for relief.  *Id.* at 14-15.  Garza responds that Mobley's Motion is untimely, *see* doc. 12 at 1, but that assertion is addressed below in considering his Motion for Default.  He also "argues that the entire civil lawsuit depicts prima facia (first see, sufficient evidence for a trial) that the Defendant[, presumably Mobley,] is aware of the lack of signed/ sworn Affidavit / Bench Warrant from a Judge to arrest the Plaintiff . . . ."  *Id.* at 2.  He contends that certain ambiguous allegations concerning his claims, "depicts the prima facia, appropriately correlates the Defendant (Mitchell C. Mobley ADA) regarding the above defamation via Defendants overstepping their jurisdiction with infringing upon the Plaintiffs' Constitutional / Civil Rights."  *Id.* at 3 (unedited).  To the extent that his arguments are discernable at all, they fail.

Charitably construed, Garza appears to argue that Mobley is, somehow, implicated in the constitutional violations he alleges arising out of the traffic stop, subsequent arrest, and detention.  However, there is no allegation that Mobley participated in those acts.  Civil claims for violations of constitutional rights, which constitute the bulk of the claims asserted in Garza's Complaint, *see* doc. 1 at 7-12 (asserting claims for

violations of constitutional rights[4]), cannot be asserted based on vicarious liability; defendants can only be liable when their own conduct violates a plaintiff's rights. *See, e.g., Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, *through the official's own individual actions*, has violated the Constitution." (emphasis added)). The Court cannot discern that the Complaint alleges any action by Mobley.[5] *See* doc. 1 at 2-7 (factual allegations), 14 (alleging Mobley "violated [Garza's] 'due process' civil rights by subverting my rights, depicted in paragraphs 1 through 23 and 95-100[6]"). To the extent that Plaintiff argues that he

---

[4] The Court notes that some of Garza's constitutional claims, though they invoke rights secured under the United States Constitution, *see, e.g.,* doc. 1 at 7, also invoke the Georgia Constitution, *see, e.g., id.* There is, however, no private cause of action for officials' violations of the Georgia Constitution. *See, e.g., Dixon v. Georgia Dept. of Pub. Safety*, 135 F. Supp. 3d 1362, 1372 (S.D. Ga. 2015) ("Georgia has no equivalent to 42 U.S.C. § 1983, which gives a claim against a state officer individually for certain unconstitutional acts." (quoting *Howard v. Miller*, 476 S.E.2d 636, 639 (Ga. App. 1996)) (internal quotation marks omitted)). The claims for constitutional violations, therefore, must be § 1983 claims.

[5] The Court notes that the Complaint refers several times to an "Affidavit of Truth certified by the Clerk of Court of Chatham County State Court on the 1st day of October 2024 and filed for record." *See, e.g.,* doc. 1 at 12. That document appears to be attached to his Motion for Entry of a Default Judgment. *See* doc. 10 at 16-19. It largely restates allegations in his Complaint. The Affidavit's suggestion that, somehow, it required its addressed recipient, Judge Elizabeth Coolidge, to controvert it is addressed below in the context of the potential application of Federal Rule of Civil Procedure 11.

[6] Paragraphs 95-100 concern Garza's alleged "false imprisonment" based on his contention that the arresting officer, it is not clear which one, lacked probable cause to arrest him without a warrant. Doc. 1 at 13. To the extent that those allegations

has stated a claim pursuant to 18 U.S.C. §§ 241 & 242, *see* doc. 12 at 4, those statutes are criminal in nature and cannot be asserted by private plaintiffs, *see, e.g., Sanders v. Carro*, 2024 WL 382454, at *2 (N.D. Ohio Feb. 1, 2024) ("Sections 241[ and] 242 . . . are criminal statutes and provide no private right of action to civil plaintiffs," and collecting cases).[7] Thus, Garza's Complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," *Iqbal*, 556 U.S. at 678, against Mobley.

Moreover, as Mobley correctly points out, to the extent that there are any "factual" allegations against him in the Complaint, they support the conclusion that he enjoys absolute immunity for any claim arising out of them. As noted above, the Complaint refers to Mobley as "the Assistant District attorney for the [law enforcement officer] Defendants . . . ." Doc. 1 at 2. To the extent that that assertion is cogent, it implies

---

are factual at all, and not legal conclusions, *see, e.g., Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."), they do not refer to or plausibly implicate any action by Mobley.

[7] Plaintiff's Complaint cites to the Supreme Court's opinion in *Screws v. United States*, 325 U.S. 91 (1945), concerning the broad scope of the criminal civil rights statutes. *See, e.g.,* doc. 1 at 5. That case concerns the validity of an indictment secured, presumably by a United States Attorney. *See Screws*, 325 U.S. at 93-94. It, therefore, does not alter the conclusion that, whatever the breadth of the criminal statutes, they cannot be invoked by private plaintiffs.

that Mobley's relevant conduct occurred in his capacity as an Assistant District Attorney.   That implication is supported by statements in Garza's briefs that Mobley's conduct involved his "aware[ness]" of a "lack of signed/ sworn Affidavit/ Bench Warrant from a Judge to arrest the Plaintiff . . . ," doc. 12 at 2; *see also id.* at 4, which suggests the exercise of Mobley's legal judgment in his capacity as an Assistant District Attorney.

Prosecutors are immune from § 1983 liability where their alleged malfeasance stems from their "function as advocate." *Jones v. Cannon*, 174 F.3d 1271, 1281 (11th Cir. 1999).  They enjoy "absolute immunity for the initiation and pursuit of criminal prosecution," even when accused of perjury.  *Id.; see also Imbler*, 424 U.S. 409 (prosecutorial immunity applied to allegations prosecutor knowingly used perjured testimony and suppressed material evidence at trial); *Jackson v. Capraun*, 534 F. App'x 854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent); *Fullman v. Graddick*, 739 F.2d 553, 559 (11th Cir. 1984) (determining prosecutor entitled to immunity from § 1983 liability for allegedly conspiring to withhold evidence and to create and proffer perjured testimony).

Prosecutorial immunity "extends to a prosecutor's 'acts undertaken . . . in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State.'" *Jones*, 174 F.3d at 1281 (citation omitted).

> Prosecutorial immunity applies, for instance, to the prosecutor's actions in initiating a prosecution and presenting the State's case. A prosecutor is immune for malicious prosecution. Prosecutors are immune for appearances before a court and conduct in the courtroom, including examining witnesses and presenting evidence in support of a search warrant during a probable cause hearing.

*Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009) (citations omitted). Prosecutors are similarly immune from suit, under Georgia law, for actions taken in their prosecutorial capacities. *See, e.g., Hall v. Georgia Dept. of Pub. Safety*, 2015 WL 12867005, at *10 (N.D. Ga. June 30, 2015) ("Similar to the immunity applicable to claims under § 1983, Georgia law recognizes that prosecutorial immunity extends to a prosecutor's decision to file formal criminal charges against an individual." (internal quotation marks and citations omitted)). Since the Court can discern no allegation in the Complaint that implicates Mobley's conduct outside of his

prosecutorial role, he appears to be absolutely immune.[8]

Since Garza's Complaint fails to allege sufficient facts to support any discernable claim against Mobley, Mobley's Motion to Dismiss should be **GRANTED**. Doc. 9. In the alternative, to the extent that any factual allegations against Mobley are discernable at all, they exclusively concern actions taken in his prosecutorial capacity. Since he would enjoy absolute immunity from any claim arising from those actions, under either federal or state law, his Motion should be **GRANTED** on that ground as well. Doc. 9. Garza's claims against Mobley should, therefore, be **DISMISSED**. Doc. 1.

### III.   Motion for Entry of a Default Judgment (Doc. 10)

Garza has also filed a Motion for Entry of a Default Judgement. *See generally* doc. 10. It asserts that none of the defendants responded within the deadline imposed by Rule 12 and seeks a default judgment, pursuant

---

[8] Garza's response also disputes Mobley's assertion of immunity because he "lacks the merit to stand citing statutes and codes that are contrary to the U.S. of Americas Constitution, 'All codes, rules, and regulations are for government authorities only, not human/ Creators in accordance with God's laws. All codes, rules, and regulations are unconstitutional and lacking due process . . . .'" Doc. 12 at 4. To the extent that Garza's assertion that well-established principles of prosecutorial immunity are unconstitutional merits any response from the Court at all, it is discussed below in the context of the potential application of Federal Rule of Civil Procedure 11.

to Rule 55(b).[9]  *See id.* at 1.  Defendants Barella, Lanier, Ballard, and Brinson oppose default on the grounds that they were never effectively served.  *See generally* doc. 13.  Defendant Mobley responds that he timely filed his Motion to Dismiss, which, by operation of Rule 12(a)(4)(A), continues the deadline to answer the Complaint until "14 days after notice of the court's action," on the motion.   *See generally* doc. 15. Plaintiff's apparent argument that the Chatham County Deputy Sheriff's failure to effectively serve the defendants suggests a conspiracy between the deputy and defendants is, charitably, speculative.  *See* doc. 17 at 2. He does not appear to have responded at all to Mobley's argument that his timely Motion to Dismiss satisfied his obligation under Rule 12.  *See generally id.*

Defendants' arguments are correct.  As explained above, based on the record before the Court, Barella, Lanier, Ballard, and Brison were never effectively served.  As this Court has explained, "[a] defendant's obligation to respond does not arise . . . until he has been served with the

---

[9]  Garza's request for a "default judgment," pursuant to Federal Rule 55(b) omits a critical step in the process.  The Federal Rules require a plaintiff seeking a default judgment to follow a two-step process.  The first step in that process is to seek an entry of default.  *See* Fed. R. Civ. P. 55(a).  However, since neither an entry of default nor a default judgment is appropriate, the procedural misstep is moot.

summons and complaint or has waived service." *Carswell v. Whittle*, 2012 WL 6084649, at*1 (S.D. Ga. Oct. 24, 2012).  It is, therefore, clear that entry of default is only proper against a defendant who has been properly served.  *Id.* (citing, *inter alia.*, *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673, 685 (N.D. Iowa 1995) ("[W]here, as here, the plaintiffs cannot make such a showing, because it appears from the record that they have never properly served the defendants, none of the defendants has failed to plead or defend as required by the rules of civil procedure, and neither entry of default nor entry of default judgment would be proper.")).  Since the record does not support that Barella, Lanier, Ballard, and Brinson were served, their obligation to respond never arose, and entry of default is not warranted.  Garza's Motion is, therefore, **DENIED, in part**.[10]  Doc. 10, in part.

As noted above, Garza does not present any argument against Defendant Mobley's argument that he responded timely to the

---

[10]  Denial of a plaintiff's request for an entry of default is non-dispositive within the meaning of 28 U.S.C. § 636.  *See, e.g., Griffin v. Philips*, 2023 WL 129416, at *2 (S.D. Ga. Jan. 9, 2023) (citing *Stephenson v. Lappin*, 2007 WL 1577632, at *1 (E.D. Cal. May 31, 2007)); *see also, e.g., Crestwood Mgmt., LLC v. Ferguson*, 2024 WL 2068294, at *2 n. 1 (S.D. Ga. Apr. 5, 2024) ("The entry of default . . . constitutes a pretrial matter that does not dispose of any claim or defense; as a result, courts have treated motions of this sort as subject to disposition by a magistrate judge under 28 U.S.C. § 36(b)(1)(A)." (internal quotation marks and citation omitted)).

Complaint. A motion to dismiss under Rule 12(b)(6) is a responsive pleading. *See* Fed. R. Civ. P. 55(a) (entry of default is proper only "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend"); *Guice v. Postmaster General, U.S. Postal Service*, 747 F. App'x 827, 829 (11th Cir. 2018) (holding that default judgment was not warranted where the defendant timely filed a motion to dismiss). Based on the Sheriff's Entry of Service reflecting service upon Defendant Mobley, he was served[11] on November 27, 2024. Twenty-one days from November 27 was December 18, 2024. Mobley filed his Motion to Dismiss on December 18, 2024. *See* doc. 10. Mobley was, therefore, never in default and Garza's Motion is **DENIED, in part**. Doc. 10, in part.

Since Garza is not entitled to an entry of default against any defendant in this case, his Motion for Entry of a Default Judgment is **DENIED**. Doc. 10.

---

[11] It appears that service upon Mobley is arguably defective for the same reasons that service upon the other defendants is. *See* doc. 6 at 1 (indicating that process was left "at [Mobley's] place of employment," with an unidentified party). However, defects in service are waived by failing to raise them in any motion under Rule 12. *See* Fed. R. Civ. P. 12(g), (h).

In summary, Defendants Barella, Lanier, Ballard, and Brinson's Motion to Dismiss should be **DENIED**.  Doc. 7.  If the District Judge adopts that recommendation, Garza is **DIRECTED** to effect service upon those defendants by no later than twenty-one days from the date of the District Judge's Order.   Mobley's Motion to Dismiss should be **GRANTED**.  Doc. 9.  Garza's claims against him should be **DISMISSED**. Garza's Motion for Entry of Default Judgment is **DENIED**, as he is not entitled to an entry of default.  Doc. 10.  Finally, Garza has submitted a document, titled a "letter," to the District Judge informing him that the defendants have not taken steps to confer, as required by Rule 26(f) and the District Judge's Order, doc. 5.  *See* doc. 19.  The letter does not seek any specific relief, but requests "assistance."  *Id.* at 1.  The Court, clearly, cannot "assist" litigants.  *Cf. In re Elligsworth Residential Cmty. Ass'n, Inc.*, ____ F.4th ____, 2025 WL 78887, at *7 (11th Cir. Jan. 13, 2025) (liberal construction of *pro se* filings, "does not give [courts] license to serve as *de facto* counsel for a party" (internal quotation marks and citation omitted)).  Moreover, since, as discussed above, Mobley should be dismissed from this case and the remaining defendants have not been served, any relief related to the Rule 26(f) process is moot.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to the R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

## IV.    Rule 11

Federal Rule of Civil Procedure 11(b) imposes a duty on any party submitting material to the Court. It states: "By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an . . . unrepresented party certifies

that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . it is not being presented for any improper purpose, such as to . . . cause unnecessary delay, or needlessly increase the cost of litigation, . . . [and] the . . . legal contentions are warranted by existing law . . . ." Fed. R. Civ. P. 11(b)(1)-(2).  The Court may impose sanctions, including monetary sanctions, against parties for violating the Rule.  *See* Fed. R. Civ. P. 11(c)(4)-(5).  Moreover, the Court may, on its own motion, order a party "to show cause why conduct specifically described in the order has not violated," the Rule.  Fed. R. Civ. P. 11(c)(3).  While none of Garza's filings, to date, merit any action pursuant to Rule 11, they do include inappropriate material.

First, there are aspects of Garza's filings that are indicative of the wholly discredited "sovereign citizen" legal theory.  Garza's Complaint refers to him as "a living man," doc. 1 at 1, his filings cite to the Uniform Commercial Code, *see* doc. 17 at 3; doc. 18 at 5, use a red-ink thumbprint with his signature, *id.*, and refer to an "affidavit of truth," albeit submitted in another proceeding, *see* doc. 10 at 16-19.  While there is nothing improper in those references, as they have no effect on any substantive argument, they suggest that Garza may be relying, at least

in part, on "sovereign citizen" materials, perhaps found on the Internet. *See, e.g., Maida v. United States*, 2025 WL 48934, at *2 (D. Nev. Jan. 7, 2025) (discussing "sovereign citizens'" use of "UCC 1-308"); *Pouncey v. Bryant,* 2023 WL 5548591, at *2 n. 3 (D.S.C. Aug. 29, 2023) (noting "Plaintiff's Complaint bears several hallmarks of the sovereign citizen movement—a red thumbprint near the signature . . . and a reference to UCC 1-308."); *Wright v. Lotti*, 2023 WL 11795603, at *1 (N.D. Ga. June 20, 2023) (discussing the filing of an "affidavit of truth," and contention that third-party's failure to respond constituted admission); *Osorio v. Connecticut*, 2018 WL 1440178, at *5 (D. Conn. Mar. 22, 2018) (discussing "sovereign citizens'" use of "living man" terminology).

"Sovereign citizen" theories have been consistently rejected by the federal courts as utterly frivolous, regardless of how the litigants portray themselves. *See, e.g., United States v. Sterling*, 738 F.3d 228, 233 n.1 (11th Cir. 2013) (noting that courts routinely reject sovereign citizen legal theories as "frivolous") (citing *United States v. Benabe*, 654 F.3d 753, 761-67 (7th Cir. 2011) (recommending that sovereign citizen theories "be rejected summarily, however they are presented")); *Roach v. Arrisi*, 2016 WL 8943290 at *2 (M.D. Fla. Jan. 7, 2016) (noting that sovereign citizen

theories have not only been consistently rejected by the courts, but they have been described as "utterly frivolous," "patently ludicrous," and "a waste of . . . the court's time, which is being paid for by hard-earned tax dollars") (citation omitted)); *United States v. Alexio*, 2015 WL 4069160 at *3 (D. Hawaii July 2, 2015). This Court has recognized that such claims and arguments are properly dismissed as frivolous. *See, e.g., Owens v. Wilcher*, 2022 WL 2440808, at *2 (S.D. Ga. July 5, 2022); *Williams v. Deal*, 2018 WL 5624309, at *1 (S.D. Ga. Oct. 19, 2018) ("To call 'sovereign citizen' arguments 'nonsense' would be an insult to nonsense; such arguments are utterly worthless . . . ."). Garza is advised that reliance on authorities espousing such theories may have detrimental effect on his litigation of this case and may subject him to sanctions.

Second, and more troublingly, Garza's filings include purported quotations from legal authority that are inaccurate. For example, in his Complaint, he describes a state supreme court case as issuing from the United States Supreme Court. *See* doc. 1 at 3 (quoting *Self v. Rhay*, 377 P.2d 885 (Wash. 1963)); *see also, e.g.,* doc. 12 at 4. Moreover, the language he quotes, purportedly from that case, "that 'The common law is the real law, the Supreme Law of the land, the code, rules, regulations, policy,

and statutes are 'not the law,'" doc. 1 at 3, does not appear in the cited case, *see generally Self*, 377 P.2d 885.  In fact, that language does not appear in any identifiable legal authority, although several courts have quoted it from *pro se* pleadings.  *See, e.g., Jones v. Hamilton Cnty Municipal Crim. Ct.*, 2024 WL 5054883, at *2 (S.D. Ohio Dec. 10, 2024). The situation is the same with his purported quotation from *Rodrigues v. Donovan* 769 F.2d 1344 (9th Cir. 1985).  *See* doc. 1 at 3; *see also, e.g.,* doc. 12 at 4; *Jones*, 2024 WL 5054883, at *2.  To the extent that Garza has adopted these quotations and citations from internet-based resources, the Court's discussion above applies.  Regardless of their origin, however, Garza is ultimately responsible for the accuracy of his submissions to this Court.  Inaccurate citations to authority may also subject him to sanctions.

**SO ORDERED AND REPORTED AND RECOMMENDED**, this 6th day of February, 2025.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA